# Pratt *v.* Darlington.

*Trust and trustees—Resulting trust—Confidental relation—Gift.*

In an action by a sister against a brother to enforce an alleged trust, it appeared that the brother held a judgment against his sister's land, which judgment followed a mortgage and preceded another judgment. Execution issued on the second judgment, but prior to the sheriff's sale the defendant wrote to his sister as follows: "I may attend the sale if it takes place for the purpose of preventing a sacrifice, but will be governed by my own judgment entirely as to the value of the property." The defendant bought the property, resold it, and after paying his sister's debts had a balance of $481. As to this balance he wrote, "We have a balance of $481, which amount, by contributions from mother and others of our family has been raised to $500. This amount we have invested at present at six per cent interest in our own names for thy benefit." There was no other evidence written or parol, to establish a trust relation between plaintiff and defendant. *Held,* that plaintiff was not entitled to recover the balance representing the profit on the resale.

Argued Dec. 8, 1900. Appeal, No. 119, Oct. T., 1900, by plaintiffs, from judgment of C. P. Delaware Co., Dec. T., 1898, No. 86, on verdict for plaintiffs in case of Henry B. Pratt and Amy Pratt, his wife, in right of said Amy Pratt v. Jared Darlington. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Assumpsit for money had and received. Before .CLAYTON, P. J.

In addition to the facts mentioned in the opinion of the Superior Court the two letters therein referred to are as follows:

"August 10, 1890.

"My dear sister Amy,—I was in the city on Friday, and consequently did not receive thy letter till evening. I went to West Chester early Saturday morning hoping to see thee. I do not see just now how anything can be done to prevent a Sheriff's sale of the Avondale property, except by satisfying Joseph Pratt. I may, however, attend the sale if it takes place, for the purpose of preventing a sacrifice, but will be governed by my own judgment entirely as to the value of the property.

"Very affectionately thy brother,
"JARED DARLINGTON."

" GLEN MILLS, 2–2–1891.

" My dear sister Amy,—I attended the sale of the Avondale property on the 23d day of October last, in company with George E. Darlington, and purchased the same for account of Jesse and myself, and have since sold it to Robert L. Pyle, and after paying all liens against the property, Sheriff's costs, taxes and G. E. Darlington's bill for conveyancing, we have a balance of $481.04, which amount, by contributions from mother and others of our family, has been raised to $500. This amount we have invested at present at 6 per cent. interest in our own names for thy benefit. Interest will commence January 15, date of final settlement, and will be paid to thee on the first days of June and December; for any further explanation which thee may desire I shall be pleased to have thee call on me.

" Affectionately thy brother,

" JARED DARLINGTON."

The court submitted the case to the jury.

Verdict and judgment for plaintiff for $54.83, which represented the interest on the fund invested for the years 1897 and 1898. Plaintiff appealed.

*Error assigned* among others was in refusing to give binding instructions for plaintiff.

*Charles H. Pennypacker*, for appellant.—In the case in hand it was the duty of the court to have defined the contract, and it was not the province of the jury : Justice v. Tallman, 86 Pa. 147 ; Beers v. Robinson, 9 Pa. 229 ; Merriman v. Moore, 90 Pa. 78 ; Hostetter v. Hollinger, 117 Pa. 606 ; Delp v. Bartholomay Brewing Co., 123 Pa. 42 ; Edwards v. Goldsmith, 16 Pa. 43 ; Wynn's Admr. v. Wood, 97 Pa. 216 ; Erie Dime Savings & Loan Co. v. Vincent, 105 Pa. 315 ; Dreer v. Penna. Co., 108 Pa. 226 ; Gill & Fisher v. O'Rourke, 6 Pa. Superior Ct. 605 ; Ulrich v. Getz, 9 Pa. Superior Ct. 289.

*E. H. Hall* and *George E. Darlington*, for appellee.

OPINION BY W. D. PORTER, J., May 23, 1901 :

The defendant bought at sheriff's sale certain lands which were sold as the property of Amy Pratt, his sister. He sold

the land and after paying the liens and expenses, there remained of the money which he had realized from the sale the sum of $481.04. The plaintiffs now allege that the defendant purchased at the sheriff's sale under an arrangement that he should resell the land, pay the liens and account to Amy Pratt for the surplus . . . . that the defendant took title as trustee for his sister. There can be no dispute under the evidence that the only connection of the defendant with the title immediately prior to the sheriff's sale was that of a lien creditor, and if the title which he acquired from the sheriff was affected by any trust, it must have been because of a contract between the parties. The only evidence of an understanding between the parties which is worthy of consideration is found in a letter, dated August 10, 1890, from the defendant to his sister, which was written under the following circumstances. The land had been advertised at sheriff's sale and Amy Pratt had written to the defendant requesting his intervention. The defendant replied by a letter of which only this part is material: " I do not see just now how anything can be done to prevent a sheriff's sale of the Avondale property, except by satisfying Joseph Pratt. I may, however, attend the sale if it takes place, for the purpose of preventing the sacrifice, but will be governed by my own judgment entirely as to the value of the property." The property was subject to a mortgage of $5,000 which would not be divested by the sale ; and a judgment of $2,000 held by J. & J. Darlington, of which firm the defendant was a member ; and a judgment of $2,000 held by Joseph W. Pratt. The defendant was interested in preventing a sacrifice of the property, by bidding at the sale so as to protect the Darlington judgment. The letter above referred to contained no intimation that the defendant would undertake to protect any interests other than his own, and it expressly asserted that the writer would be governed entirely by his own judgment. No written evidence was produced which would have warranted the court in holding, as matter of law, that the defendant took title to the land as a trustee. There was no evidence, either written or parol, that the defendant entered into any arrangement with Joseph Pratt or any other party interested in the property, or did anything which could have affected the bidding at the sale. It may well be doubted whether there was sufficient evidence

to warrant the submission to the jury of the question of the existence of any relationship of trust and confidence, between the defendant and his sister, at the time of or with regard to the sale. The court below, however, submitted that question to the jury, and we must accept the verdict as settling that question of fact against the contention of the plaintiffs. The defendant acquired title to the land free from any liability to account to Amy Pratt, and when he sold there was no clog upon his right to do as he pleased with the purchase money.

The defendant having sold the land might have put the purchase money in his pocket, but he was no more forbidden by any principle of law than by the suggestions of brotherly affection from devoting that money to the payment of the debts of his sister and making provision for her welfare. He chose to pay the judgments against her and thus relieve her other land from a burden. There still remained in his hands the sum of $481.04 which was absolutely his own. This was the condition of affairs when, on February 2, 1891, he wrote to his sister telling her what he had done. This letter distinctly stated that the purchase of the land had been made for account of the defendant and Jesse Darlington, who was his brother and partner; and negatives any implication of a pre-existing trust. The letter is a statement, from a brother to a sister, that he having made a profit of $481.04, out of the purchase of lands which had formerly been hers, his mother and others of the family had by contributions increased the amount to $500. The purpose for which this was done is stated in this language: " This amount we have invested at present at six per cent interest in our own names for thy benefit. Interest will commence January 15th, date of final settlement, and will be paid to thee on the first days of June and December; for any further explanation which thee may desire I shall be pleased to have thee call on me." This was an unequivocal declaration that the defendant and other members of his family had contributed the sum of $500, and had invested the sum in their own names for the benefit of Amy Pratt. There can be no question that so long as this gift was to remain in the control of the donors they had the right to agree upon the manner in which the benefit was to accrue to the beneficiary. This letter of the defendant declares that the agreement between the donors was that

231, (1901).]                    Opinion of the Court.

the interest upon the fund should be paid to the beneficiary
on the first day of each June and December. The parol evi-
dence submitted is in accord with this statement. It is undis-
puted that the donors have committed the entire management
of the fund to Jared Darlington, the defendant, who is the sole
active trustee. It is not now necessary to determine the person
to whom the principal of the fund must ultimately go. The
agreement of the donors was that the fund should be invested
and controlled by the defendant, who should pay the interest
at stated times to the beneficiary. Amy Pratt is in the position
to demand the benefits of the agreement although she was no
party thereto and has no power to change its terms.

The judgment is affirmed and the appeal is dismissed at
costs of appellants.